Marat BALAGULA, Petitioner,

v.

UNITED STATES of America, Respondent.

No. CV 99–3572.

United States District Court, E.D. New York.

Nov. 10, 1999.

Linda D. Sheffield, Decatur, GA, Stillman & Friedman, by James A. Mitchell, New York City, for petitioner.

Stephen G. Huggard, Assistant U.S. Attorney, Boston, MA, for respondent.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Marat Balagula moves for an order pursuant to 28 U.S.C. § 2255, vacating a plea of guilty entered in this court in 1994, pursuant to which Balagula was sentenced to a 77 month term of imprisonment. For the reasons set forth below, the Petition is dismissed as time-barred.

## BACKGROUND

I. *Time Limitations For Filing a Motion for Post–Conviction Relief Under AEDPA*

Prior to 1996, federal prisoners were permitted to file motions to vacate their sentences pursuant to 28 U.S.C. § 2255 ("Section 2255") at any time. The passage of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") changed this rule and imposed a one year statute of limitations on the filing of an application pursuant to Section 2255. *Mickens v. United States of America*, 148 F.3d 145, 146 (2d Cir.1998); *see* 28 U.S.C. § 2255.

The one year period begins to run from the latest of:

- the date on which the judgment of conviction becomes final;
- the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
- the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
- the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(1)–(4).

AEDPA's statute of limitations clearly applies to all convictions that became final after the statute's effective date—April 24, 1996. In cases where a conviction became final before AEDPA's effective date, a Section 2255 motion was required to be filed by April 24, 1997—one year after the effective date of AEDPA. *See Mickens*, 148 F.3d at 146.

Section 2255 relief may be sought in excess of one year of a conviction becoming final if the circumstances set forth in 28 U.S.C. § 2255(2), (3) or (4) are present. Relevant here is that subsection which allows the one year period to begin to run only from the date upon which the facts supporting the movant's claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(4). This provision ensures that habeas relief may be sought even after a conviction has been final for one year, in cases where newly discovered facts support the claim. In such cases, the one year period begins to run from the date upon which "the facts supporting the claim ... could have been discovered though the exercise of due diligence." 28 U.S.C. § 2255(4).

In the analogous context of habeas corpus relief sought from a state court conviction it has been held that while AEDPA allows the statute to run anew upon the discovery of new evidence, it "does not convey a statutory right to an extended delay ... while a habeas petitioner gathers every possible scrap of evidence that might ... support his claim." *Lucidore v. New York State Division of Parole,* 1999 WL 566362 * 5 (S.D.N.Y. August 3, 1999), quoting, *Flanagan v. Johnson,* 154 F.3d 196, 199 (5th Cir.1998).

II. *Procedural Background: The Indictments, Balagula's Prior Conviction and Guilty Plea*

The procedural background of this case is set forth in exhaustive detail in a prior opinion of this court and in the affirmance of that opinion's holding by the Second Circuit. *See United States v. Macchia,* 845 F.Supp. 953 (E.D.N.Y.), *aff'd.,* 35 F.3d 662 (2d Cir.1994). Familiarity with these opinions is presumed and the court here repeats only those facts necessary to decision on the present application.

In 1992 and 1993, Balagula was named in two separate indictments, referred to as the "Tarricone" indictment and the "Macchia" indictment. Both indictments alleged tax fraud and conspiracy to avoid the payment of taxes in connection with the sale of gasoline. Balagula was tried under the Tarricone indictment and, after an eight day jury trial, was found guilty on several counts.

After his conviction, Balagula moved to dismiss the Macchia indictment on the ground that prosecution under that indictment would violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. This court found that the two conspiracies charged were distinct as a matter of law and fact and held that prosecution under the Macchia indictment was not barred by principles of double jeopardy. *Macchia,* 845 F.Supp. at 959–60. Among other things, this court relied upon differences in the defendants named, the companies used, and the methods employed in furtherance of each conspiracy, to support the holding that separate prosecutions were permissible. This court's holding was affirmed by the Second Circuit. *See United States v. Macchia,* 35 F.3d 662 (2d Cir.1994).

When holding that the Tarricone and Macchia indictments alleged separate conspiracies, both this court and the Second Circuit noted, and to some extent relied upon, the fact that the initial gasoline suppliers in each conspiracy were different entities. Thus, this court noted that the gasoline supplier in the Tarricone indictment was a company known as "A. Tarricone, Inc." "(ATI"). The supplier of gasoline in the Macchia indictment was a company known as New York Fuel Terminal Corporation ("NYFT"). *See Macchia,* 845 F.Supp. at 954, 956. Similarly, the Second Circuit noted the lack of overlap of initial gasoline suppliers in the two conspiracies. *See Macchia,* 35 F.3d at 665; 666.

Importantly, however, both this court and the Second Circuit relied upon other facts when rejecting the double jeopardy claim. *See Macchia,* 845 F.Supp. at 958 (noting different role of one of the companies and different defendants involved in both conspiracies); *id.* at 959 (noting that Macchia conspiracy involved eighteen different companies while Tarricone conspiracy involved false invoices between only two companies and noting no common overt acts); *Macchia,* 35 F.3d at 669 (noting use of different "burn" companies in each conspiracy); *id.* at 670 (noting greater complexity of *Macchia* conspiracy); *id.* at 671 (noting that conspiracies operated in different geographic regions).

After the Second Circuit's affirmance of this court's denial of Balagula' s double jeopardy claim, Balagula pled guilty to the Macchia indictment and was sentenced to a term of imprisonment of 77 months. This term was to run consecutively with

Balagula's 120 month sentence imposed after his Tarricone conviction.

## II. *Balagula's Present Motion*

Balagula's attack on his sentence argues that newly discovered documents prove that NYFT was, in fact, the supplier of gasoline in both the Tarricone and Macchia conspiracies. According to Balagula, this identity of suppliers undermines the holdings of this court and the Second Circuit that prosecution under the Macchia indictment did not constitute double jeopardy. Balagula concludes that these documents "directly contradict" the holdings on the double jeopardy issue and require a grant of his Section 2255 motion.

## DISCUSSION

### I. *The Timeliness of the Present Petition*

At the outset, the court must consider whether Balagula's petition is timely under the AEDPA one year statute of limitations. Balagula pled guilty in November of 1994, prior to the enactment of AEDPA. Accordingly, the one year period in which to file a Section 2255 motion commenced upon enactment of the statute and expired on April 24, 1997. *See Mickens,* 148 F.3d at 146. Because this action was not commenced until 1999, it cannot be timely under the one year rule.

■ Balagula argues that this motion is timely pursuant to that section of the statute that allows a Section 2255 motion to be commenced within one year of the discovery of facts supporting a claim. *See* 28 U.S.C. § 2255(4). As noted, this section of AEDPA allows the one year period to begin to run from the date upon which the factual predicate for petitioner's claim could have been discovered though the exercise of due diligence. As discussed below, it is precisely this requirement of due diligence that undermines any notion that Balagula's motion is timely.

Balagula admits that all documents upon which he now relies have been in his possession, or in the possession of his trial attorney, since at least 1994. He argues, however, that it was not until the summer of 1998, when Balagula's daughter retrieved her father's files from trial counsel, that the documents supporting Balagula's present theory were properly reviewed and analyzed. According to present counsel, the documents were reviewed and discussed with Balagula in 1998, leading to the current analysis regarding the source of the gasoline in both conspiracies.

The government vigorously disputes that the documents currently relied upon by Balagula prove a single source of supply for the "bootlegged" gasoline. Whatever the proper analysis of the documents, however, one thing is clear. The documents claimed to have been recently discovered were in Balagula's counsel's possession and completely available to Balagula beginning in 1994. Certainly, with the exercise of the required "due diligence," the documents could have been retrieved and reviewed prior to 1998. Indeed, Balagula could have requested those documents at any time. There is no question that Balagula aided his current attorneys in their review of the documents. Certainly, with his intimate knowledge of the schemes alleged, he could have reviewed those documents on his own sometime between 1994 and 1998. That he waited until 1998 to request his files does not constitute the due diligence required by AEDPA.

To hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely. A defendant could simply wait to fully review his files for years and, upon review, suddenly claim that the because the files were not early properly reviewed, they were not previously discoverable. This cannot be an exercise of due diligence.

Allowing an extension of the statute of limitations in a case like this also would put the government at an unfair disadvantage. Where, as here, the case required analysis of thousands of detailed records, it

is unfair, years after the prosecution, when documents may have been destroyed, to require a relitigation of the entire matter. Any holding to the contrary would defeat completely the purpose of the one year rule.

Balagula seeks to establish due diligence by arguing that it was the incompetence of trial counsel that led to ignorance of the documents at the time of the 1994 double jeopardy motion. In support of this argument, Balagula relies on a vague affidavit of trial counsel which states that counsel recalls receiving "a great deal" of documentary evidence after Balagula entered his guilty plea and that it is "likely" that the documents currently relied upon were among those documents. Counsel states that these documents were handed over to Balagula in 1998, upon the request of Balagula's wife. Notably, trial counsel nowhere asserts that the documents prove his former client's current "single source" theory. He states only that current counsel interprets the documents in this manner.

Trial counsel's affidavit is ambiguous as to whether or not the documents currently relied upon were, in fact, in his possession prior to the guilty plea. However, the affidavit clearly supports the fact, referred to above, that these documents have been available to Balagula for at least four years. Certainly, with the exercise of due diligence, Balagula could have obtained these documents. Indeed, according to the government, many of the documents currently relied upon were obtained from Balagula's own records. In view of the fact that Balagula (who makes no claim of innocence) arranged much of the gasoline sales involving ATI and/or NYFT, he must have known of the so-called true source of gasoline in each conspiracy. Thus, there is no excuse whatsoever for failing to make the argument currently relied upon at an earlier date. Unless, of course, the argument is, as the government contends, completely without merit.

The court however, need not reach the merits of the dispute regarding the meaning of the alleged "newly discovered" documents. It is enough to find that the documents, whatever their meaning, were wholly available to Balagula, and could have been discovered with the exercise of due diligence, in excess of one year prior to the filing of the present motion. Accordingly, the motion is time-barred under AEDPA.

█ Nor does the court find this case to be a proper situation to apply equitable tolling to the AEDPA statute of limitations. In the analogous situation of petitions for habeas corpus brought pursuant to 28 U.S.C. § 2254, it has been held that equitable tolling of the AEDPA statute of limitations applies only if " 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Torres v. Miller,* 1999 WL 714349 *6 (S.D.N.Y. August 27, 1999), quoting, *Calderon v. United States Dist. Ct.,* 128 F.3d 1283, 1288 (9th Cir.1997); *see also Burgos v. Greiner,* 1999 WL 551229 *3 (E.D.N.Y. June 21, 1999) (equitable tolling can be applied to AEDPA time period only if "party was prevented in some extraordinary way from exercising his rights"). The burden lays with the petitioner to establish the entitlement to equitable tolling. Courts should "take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." *Torres v. Miller,* 1999 WL 714349 *6 (S.D.N.Y. August 27, 1999), quoting, *Calderon v. United States Dist. Ct.,* 128 F.3d 1283, 1288 (9th Cir.1997). Considering this high hurdle and the facts presented here, the court holds that Balagula has alleged no facts that would justify an equitable tolling of the AEDPA statute of limitations.

*CONCLUSION*

For the foregoing reasons, Balagula's motion pursuant to 28 U.S.C. § 2255 is dismissed as time-barred. The Clerk of

the Court is directed to close the file in this case.

SO ORDERED